JOHN H. HELFER, Respondent, v. HAMBURG QUARRY COMPANY and THOMAS LONERGAN, Appellants.

St. Louis Court of Appeals. Opinion Filed July 20, 1921.

1. **PROCESS:** Service of: Corporations: Individuals: Place of Bringing Suit. Where the facts disclose that a defendant corporation, at the time suit was filed against it, did not have an office or agent in the city of St. Louis, such corporation could not be said to be a resident of said city; it was therefore brought with-

Helfer v. Quarry Co. & Lonergan.

in the jurisdiction of the court only by reason of the fact that the cause of action accrued i nthe city of St. Louis, and, it being a corporation, Section 1180, Revised Statutes 1919, authorized the service of the summons upon it in another county where its president resided (see section 1192), and *held* with this service upon defendant corporation plaintiff could not bring within the jurisdiction of the St. Louis court individual defendants residing in different counties under section 1190, Revised Statutes 1919, as that section applies only to a case where one of the defendants is a resident of the county in which the suit is brought.

2. **MALICIOUS PROSECUTION: Attachments: Damages: Elements.** Under the provisions of section 2983, Revised Statutes 1919, which makes the plaintiff in an attachment suit upon dissolution thereof liable for all damage occasioned thereby, loss of time may reasonably be said to come within this category and to constitute an item of damage which naturally flows from the attachment.

3. ———: ———: ———: **Loss of Time: Absence of Proof of Value: Inferences.** In an action for damages for the alleged malicious prosecution of an attachment suit, in the absence of proof of the value of the loss of time of plaintiff from his business necessarily occasioned in the defense of the attachment suit, the jury could infer the reasonable value thereof.

4. **APPELLATE PRACTICE: Exemplary Damages: Verdict for Plaintiff: Consideration Given Evidence on Appeal.** In an action for damages for the alleged malicious prosecution of an attachment where plaintiff asked for exemplary damages on the ground that the attachment was sued out against him maliciously and without probable cause, and the jury allowed such damages, plaintiff's evidence must be considered in the light most favorable to him in determining the question.

5. **MALICE: Want of Probable Cause: Inferences.** Malice may be inferred from want of probable cause.

6. **EMBEZZLEMENT: Corporate Officers: Shortage in Accounts: Criminal Intent Inferred.** Where the fact that an officer of a corporation was short in his accounts was established, and that he had in his possession money of defendant corporation for which he had not accounted, a criminal intent to embezzle such money could be inferred.

7. **MALICIOUS PROSECUTION: Attachments: Exemplary Damages: Evidence: Conversion of Corporate Funds by Officers: Record Judgment: Admissible: Error Cured by Remittitur.** An attach-

ment brought by a corporation against one of its officers on the ground that he had misappropriated its funds was dissolved on plea in abatement. In a suit against the corporation for malicious prosecution of the attachment and where it is claimed that the attachment was without probable cause and malicious entitling plaintiff to punitive damages, on the issue of probable cause, it was competent for the defendant corporation to show that in a suit between the same parties it had recovered a judgment against plaintiff on pleadings which alleged that plaintiff had funds of the corporation in his possession for which he had failed to account and which he had converted to his own use. While the record of such judgment was not conclusive, it was evidence tending to show probable cause for the prosecution, and the court erred in not permitting the introduction of such evidence. Such evidence, however, affected only the question of plaintiff's right to exemplary damages, and it was therefore held that such error could be cured by a *remittitur* of such damages.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Ferriss,* Judge.

REVERSED AND REMANDED (*with directions*) as to Hamburg Quarry Company.

REVERSED as to Defendant Lonergan.

*Anderson & Gilbert* for appellants.

*John A. Gilliam* and *Smith & Pearcy* for respondent.

BIGGS, C.—This action for damages arose out of the alleged malicious prosecution of an attachment suit by the defendant Hamburg Quarry Company against the plaintiff. By his petition plaintiff alleges that on February 14, 1917, the defendant Quarry Company was a Missouri corporation with a capital stock of $40,000, of which the plaintiff held $12,000 and the defendant Lonergan $14,000 par value; that plaintiff, defendant Lonergan, and one Rutledge (Rutledge was originally joined as a defendant but died before the trial and the action as to him was dismissed) were directors of the

company; that Lonergan was president, Rutledge secretary, and the plaintiff was vice-president and general manager. It is further averred that on said date the said Quarry Company, Rutledge and Lonergan wrongfully, wantonly maliciously and without probable cause sued out an attachment against plaintiff in a justice court in the city of St. Louis, alleging that said plaintiff was indebted to the said Quarry Company in the sum of $138.81 and that the damages for which said action was brought was for injuries arising from the commission of some felony or misdemeanor, and that said debt was fraudulently contracted on the part of said Helfer, the defendant in said attachment suit, and that said defendants wrongfully, maliciously and wantonly and without probable cause had an attachment writ issued in said cause and levied upon the 120 shares of stock owned by the said plaintiff in said Quarry Company. It is also averred that after a change of venue the cause was tried in a justice court on a plea in abatement and resulted in a finding on behalf of said Helfer on his said plea and that no appeal was taken from the decision thereon, and that said attachment was completely dissolved and fully terminated.

It is then alleged that the acts of said defendants have caused the plaintiff to incur obligations for attorney's fees for the defense of said attachment suit in the sum of $1,000, and have caused him to lose time from his business of the value of $1,000, and have injured his standing and reputation in business, and greatly humiliated and harassed him, to his damage in the sum of $25,000. Judgment is asked for the sum of $27,000 actual damages and $20,000 punitive damages.

Defendant Lonergan and the Quarry Company answered separately. Lonergan by his answer sets up that he has been and is now a resident of Jackson County, Missouri, and that until his death in March, 1918, the defendant Rutledge was a resident of Chicago, Illinois; that the Quarry Company is a Missouri corporation

with its chief office and place of business at Hamburg, St. Charles County, Missouri; that neither at the time the suit was filed nor at any time since has said Quarry Company maintained an office, had an agent, or done any business in the city of St. Louis. By reason of these facts it is alleged the court had no jurisdiction over the defendant Lonergan and the suit as to him cannot be maintained. The answer further set up a general denial of the allegations of plaintiff's petition.

The answer of the defendant Quarry Company was a general denial.

The cause being tried before a jury resulted in a verdict and judgment against both defendants for the sum of $1485 actual damages and $2000 punitive damages, making a total of $3485. From this judgment defendants Lonergan and the Quarry Company have prosecuted separate appeals.

As to the appeal of defendant Lonergan. It is first asserted in his behalf the court acquired no jurisdiction over his person by reason of the manner of service of the writ of summons upon him at Kansas City, Missouri, where he resided. By reason of the allegations of fact set forth in the petition showing that the cause of action against defendant accrued in the city of St. Louis and the defendant Quarry Company being a corporation the writ of summons was issued under the provisions of section 1180, Revised Statutes 1919, and served in Jackson County upon the defendant Lonergan as president of the Quarry Company. At the same time a copy of the writ was issued and served personally upon Lonergan in Jackson county.

The authority if any for this procedure is found in section 1190 of the statute, which authorizes a plaintiff to have a summons directed to any sheriff in the state when there are several defendants residing in different counties.

The following stipulation appears in the record:

"It is conceded that at the time this suit was instituted and at all times since then the defendant Lonergan was, has been and is now a resident of the County of Jackson, State of Missouri, and that at all said times until his death in April, 1918, defendant James E. Rutledge was a resident of the City of Chicago, State of Illinois and non-resident of the State of Missouri; that the Hamburg Quarry Company is a corporation, incorporated under the laws of the State of Missouri, in June, 1916, with its chief office and place of business at Hamburg, St. Charles County, Missouri; that neither at the time this suit was filed nor at any time since has said Hamburg Quarry Company maintained an office, had an agent or done any business in the City of St. Louis, Missouri; that at the date the writ was delivered by the sheriff of Jackson County, the Hamburg Quarry Company had gone out of business and had no office at Hamburg, Missouri; that the plaintiff was at the time this suit was filed a resident of the City of St. Louis and ever since has been a resident of the City of St. Louis.

It is conceded by the Hamburg Quarry Company that it had waived its right to question the propriety of the method of service."

The place and manner of bringing suits is governed by statute law. Section 1177, Revised Statutes 1919, provides that suits may be instituted: "First, when the defendant is a resident of the State, either in the county within which the defendant resides or in the county within which the plaintiff resides and the defendant may be found; second, when there are several defendants, and they reside in different counties, suit may be brought in any such county; third, when there are several defendants, some residents and others non-residents, suit may be brought in any county in which any defendant resides."

Section 1180 provides: "Suits against corporations shall be commenced either in the county where the cause of action accrued, . . . or in any county where such

corporations shall have or usually keep an office or agent for the transaction of their usual and customary busi-- 'ness.''

Section 1190 is as follows: ''When there are several defendants residing in different counties, the plaintiff may at his option have a summons directed to 'any sheriff in the State of Missouri,' or have a separate summons directed to the sheriff of any county in which one or more defendants may be found.''

It should be noted section 1180 says nothing about bringing in other defendants in case the suit is brought against the corporation in the county where the cause of action accrued. And under the provisions of section 1190 the right of a plaintiff to bring in defendants residing in other counties applies only to a case where plaintiff sues a defendant in a county in which a defendant resides.

Under the conceded facts as disclosed by the stipulation, supra, the defendant Quarry Company at the time the suit was filed did not have an office or an agent in the city of St. Louis and, could not be said to be a resident of said city. It was brought within the jurisdiction of the court only by reason of the fact that the cause of action accrued in St. Louis, and it being a corporation the statute, section 1180, authorized the service of the summons upon it at Kansas City where its president resided. [See section 1192.] With this service upon the defendant Quarry Company as a basis, plaintiff attempts to bring within the jurisdiction of the St. Louis court the defendant Lonergan by having a writ of summons issued under the provisions of section 1190. This the statute does not authorize, as that section applies only to a case where one of the defendants is a resident of the county in which the suit is brought. Such construction was placed upon this statute by the Supreme Court in the case of Christian v. Williams, 111 Mo. 429, 20 S. W. 96. In that case one of the defendants did not reside but was found in the county in which the plaintiff re-

sided and was served with process there. The plaintiff
then caused a writ to issue to another county for service
on another defendant in the same action. It was held
that such procedure was unauthorized by the statute.
[See, also, Roberts v. Stone, 99 Mo. App. 425, 73 S. W.
388, and Conrad v. McCall (Springfield Court of Ap-
peals), 226 S. W. 265, 1. c. 267.] The situation would be
otherwise if the defendant Quarry Company or any other
individual defendant was a resident of the city of St.
Louis and served here, but such is not the case, as it was
conceded that at the time the suit was instituted the de-
fendant Quarry Company had no office or agent here and
that the then defendant Rutledge was a non-resident of
the State of Missouri. We are compelled to look to the
statute law for authority, and it does not authorize serv-
ice of summons upon the defendant Lonergan under the
facts of the case as herein set forth. It follows that his
point is well taken and that his plea in abatement should
have been sustained and also his demurrer to the evi-
dence at the close of plaintiff's case should have been
given. There is no contention that the defendant Loner-
gan in anywise waived the question of jurisdiction or
by any action of his submitted himself to the jurisdic-
tion of the St. Louis court. It follows that as to the de-
fendant Lonergan the judgment should be reversed.

On the Quarry Company's appeal. This defendant
was concededly within the jurisdiction of the court and
it being the plaintiff in the attachment suit, upon its
abatement, was rendered liable as a matter of law under
the provisions of section 2983, Revised Statutes 1919,
"for all damages occasioned by the attachment or other
proceedings in the case." It being admitted that the
attachment was dissolved, the court instructed the jury
to find against the defendant Quarry Company for such
actual damages as they may find from the evidence plain-
tiff has sustained as will reasonably and fairly cover a
reasonable attorney's fee in connection with the defend-
ing of said attachment and the sustaining of the plea in

abatement and in addition thereto, actual damages, if, any, which you may find and believe from the evidence plaintiff has sustained on account of the loss of time from his business necessarily occasioned in the defense of said plea in abatement.

Defendant complains of this instruction because it permits a recovery for loss of time from plaintiff's business which is said to be speculative and remote and consequently not a proper element of damage. To this assertion we do not agree. The statute makes the plaintiff in the attachment suit upon dissolution thereof liable for ''all damage'' occasioned thereby. Loss of time may reasonably be said to come within this category and to constitute an item of damage which naturally flows from the attachment. [Talbot v. Plaster Co., 151 Mo. App. 538, 132 S. W. 15; Carp v. Ins. Co., 203 Mo. 295, l. c. 335, 101 S. W. 78; Walser v. Thies, 56 Mo. 89; Sutherland on Damages (4 Ed.), sections 1235, 1236 and 1237.] And in the absence of proof of the value of the loss of time, the jury could infer the reasonable value thereof. [Walser v. Thies, supra; Jennings v. Appleman, 159 Mo. App. 12-19, 139 S. W. 817.]

The foregoing is the only attack made against the judgment on behalf of the Quarry Company as far as the actual damages found by the jury are concerned.

It is contended by defendants that the evidence conclusively established probable cause for the attachment and consequently the allowance in the form of punitive damages should not stand as such are permissible only in the event the attachment was malicious and without probable cause. This is based on the fact that it is said plaintiff himself admitted on the stand that he was short in his accounts with the defendant company and that such admission constituted embezzlement of the funds of the company. While plaintiff stated that if he was short he would make it good, he denied that there was a shortage, and his evidence must be considered in the light most favorable to him in determining the question.

The plaintiff was a superintendent at the quarry and the accounts were kept at the defendant's then office in the city of St. Louis. We have examined the record carefully and think the question of malice and probable cause were questions which were correctly submitted to the jury for their determination. The evidence as a whole would fully warrant a finding that the plaintiff had no intention of embezzling any of the funds of the defendant entrusted to his care, and a finding of a want of probable cause for the attachment was fully justified by the evidence. Malice may be inferred from a want of probable cause.

On the issue of probable cause it is claimed that the court committed error in not permitting defendant to show the result of the suit on the merits appealed from the justice court. In the suit before the justice the Quarry Company, plaintiff in that action—defendant here— failed to sustain the attachment and also failed in the trial on the merits. The company appealed from the decision of the justice court to the circuit court and there obtained a judgment against this plaintiff, Helfer, for $53.35. Upon the trial of this case the defendants herein offered in evidence the judgment in that case together with the pleadings involved. The statement alleges that the Quarry Company, plaintiff in that action, paid to the defendant certain amounts of money (fully described in the statement) to be held by defendant and expended for the account of plaintiff; that thereafter defendant expended for the use and benefit of plaintiff a certain amount of said fund but that of said money delivered to defendant, defendant converted to his own personal use the sum of $360, which sum and every part thereof is due and owing to plaintiff. It is then alleged that defendant is entitled to certain credits which left a balance of $53.35, for which sum judgment is prayed. The judgment based on the statement assesses the plaintiff's damages at the sum of $53.35.

Whether the judgment based on the pleadings referred to tended to establish the fact that Helfer was guilty of a common-law conversion of specific funds, it is not necessary to here say. However we think such record and judgment did tend to establish, as between Helfer and the Quarry Company, that Helfer was short in his accounts with said company. Such shortage may have innocently existed and Helfer may have been free from any criminal intent. However if the fact that he was short in his accounts was established and that he had in his possession money of the defendant Quary Company for which he had not accounted, a criminal intent to embezzle such money could be inferred. [State v. Lentz, 184 Mo. l. c. 239, 83 S. W. 970; Wells v. Surety Company, 194 Mo. App. l. c. 395, 184 S. W. 474.]

Section 3327, Revised Statutes 1919, provides: "If any agent, clerk, apprentice, etc., of any private person, . . . or if any officer, agent, clerk, servant, etc., of any incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use . . . without the assent of his master or employer, any money, goods, etc., belonging to any such person, which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction, be punished," etc. Under this statute a criminal intent may be presumed from the act, that is, from a shortage and failure to account. [State v. Lentz, supra.]

On the issue of probable cause we think it was competent for the defendant Quarry Company to show that in a suit between the same parties it had recovered a judgment against the plaintiff Helfer on pleadings which alleged that Helfer had funds of the company in his possession for which he had failed to account and which he had converted to his own use. This alone would not conclusively establish probable cause because the shortage may have innocently existed and without criminal intent. While this record in the case in the circuit court

did not establish the fact that Helfer was guilty of embezzlement, it was competent evidence tending to establish one of the elements of that crime, namely, a shortage in the accounts of the company. We think the court erred in not permitting the introduction of the evidence. [Boogher v. Hough, 99 Mo. 185, 12 S. W. 524; Crescent City Company v. Butchers Union Company, 120 U. S. 159; Smith v. Clark, 106 Pac. 653.] In a criminal prosecution under the statute it would be necessary to show such shortage and failure to account. In the event the issue as to whether or not plaintiff Helfer was guilty of embezzlement had been involved in the circuit court case the argument of defendant's counsel to the effect that the judgment in that case was conclusive evidence of probable cause would be persuasive, but such question was not an issue in that case but only one of the elements constituting embezzlement was an issue, namely, a shortage in the accounts. Such shortage may or may not have been with a criminal intent. The jury in the criminal prosecution may or may not infer such criminal intent from the shortage. We think the evidence was admissible, but that it was not such as to conclusively establish probable cause.

We have examined the instructions and think the trial court correctly stated the rule as to probable cause and the meaning thereof and that no error was committed in regard to such question. [Carp. v. Ins. Co., 203 Mo. 295, 1. c. 355, 101 S. W. 78.]

As the error in refusing to admit in evidence the record and judgment in the circuit court affects only the exemplary damages the judgment against the Quarry Company will be reversed and the cause remanded with directions to enter judgment for plaintiff for $1485 with interest from the date of the original judgment, provided the plaintiff will within ten days remit the amount of punitive damages allowed, namely, $2,000; otherwise the judgment should be reversed and the cause remanded for a new trial as to the Quarry Company. As to the

defendant Loenrgan the judgment should be reversed as heretofore indicated.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the Circuit Court as to Hamburg Quarry Company will accordingly be reversed and the cause remanded with directions as recommended by the Commissioner, provided plaintiff enters a remittitur of $2,000 within ten days; otherwise the judgment is reversed and the cause remanded for a new trial.

The judgment as to defendant Lonergan is reversed. *Allen, P. J.,* and *Dames, J.,* concur; *Becker, J.,* absent.